## Carrie Smith, Appellee, v. Ernest Mammen, Appellant.

1.  PLEADING—*upon what recovery must be predicated.* A plaintiff in an action for malpractice must recover if at all upon the charges in her declaration and although other wrongful acts or other acts of negligence may be disclosed by the evidence, they cannot be recovered for.

2.  VERDICTS—*when set aside as against the evidence.* While it is ordinarily the province of a jury to determine the questions of fact and while the vital point as to the right of recovery may depend wholly upon a question of fact, the jury must determine that fact in accordance with the weight of the evidence, but if they utterly disregard the weight and preponderance of the evidence, it is the duty of the Appellate Court to set the verdict aside.

Appeal from the Circuit Court of McLean county; the Hon. COLOSTIN D. MYERS, Judge, presiding. Heard in this court at the May term, 1911. Reversed. Opinion filed October 20, 1911. Rehearing denied and opinion slightly modified December 9, 1911.    *Certiorari* denied by Supreme Court (making opinion final).

WELTY, STERLING & WHITMORE, for appellant.

STONE, OGLEVEE & FRANKLIN, for appellee.

MR. PRESIDING JUSTICE PHILBRICK delivered the opinion of the court.

On July 5, 1908, appellee, who resided in Bloomington, was suffering from an ailment, and called Dr.

Rhodes. Upon his first visit, the doctor was unable to satisfy himself as to the cause of her condition; a more thorough examination on July 6 convinced him that she was suffering from a case of extra-uterine pregnancy, and this was indicated by a lump or growth in the region of the right Fallopian tube; he also found a lump on the right side near the colon which he concluded indicated an impaction of the bowels. Appellee was placed in charge of Ellen Charles, a graduate nurse, and from that time until July 30, Dr. Rhodes attempted to remove the impaction of the bowel and restore it to its natural condition. For this purpose, appellee was given one hundred and eighteen doses of physic of various medicines calculated to produce the desired results, also twenty-three rectal injections. These produced passages of the bowels, but not adequate and her condition did not improve. On July 30 a consultation was had, Dr. Rhodes, Dr. Smith and Dr. Mammen participating, it having been previously determined between Dr. Rhodes, appellee and her husband that if an operation was necessary Dr. Mammen, appellant, should perform it. The consultation of July 30th resulted in the determination by these physicians that Dr. Rhodes' diagnosis of the case was correct, and that an immediate operation was necessary. Accordingly, appellee was taken to the Brokaw Hospital in Bloomington and at five-thirty p. m. on July 30 the operation was performed. Before proceeding with the abdominal operation, Dr. Mammen curetted appellee and after the curettment the vagina, the walls of the uterus and the cul-de-sac between the uterus and the wall of the rectum were packed with hospital sponges for the purpose of taking up and absorbing any secretions that might be caused by reason of the abdominal operation to be performed, and also to hold the womb in place. One of these sponges was left protruding from the vagina.

In performing the abdominal operation, Dr. Mammen was assisted by Dr. Rhodes, Dr. Charles Chapin and Dr. E. B. Hart, and two professional hospital nurses, Miss Alice Hopping and Miss Marie Bolles. Dr. Chapin administered the anaesthetic, Miss Hopping prepared and handed the instruments to Dr. Mammen, and Miss Bolles, now Mrs. Struhbar, had the care, preparation and handling of the sponges; they were counted by her before the operation was commenced; she alone handed them to Dr. Mammen while he was performing the operation, and received them back from him. After the incision in the abdomen was made by Dr. Mammen, the sponges prepared by Mrs. Struhbar were used to take up by absorptions the blood and secretions in the abdomen and were also placed in the abdomen for the purpose of holding the intestines and the walls of the abdomen away from the operation. In keeping the intestines and the walls of the abdomen back Dr. Mammen was assisted by Dr. Rhodes and Dr. Hart, who held the instruments attached to the sponges for this purpose. After the incision was made it was discovered that the diagnosis made by Dr. Rhodes was correct and a foetus was found in the right Fallopian tube and the growth or mass of which it was composed was in a friable condition and the foetus dead. Dr. Mammen removed the section of the right Fallopian tube which was so infected. He also found adhesions of the bowels in numerous places, together with an impaction of the colon near the point of pregnancy. The adhesions were broken, the wound was thoroughly dressed and cleansed and closed, with the exception of a tube left in the abdomen for drainage. The sponges which were used for this abdominal operation were counted before the operation by Mrs. Struhbar who had them in charge and also after the operation was performed, and she testifies that no sponges were missing. Ap-

pellee was removed to her room in the hospital where she was visited day after day for some time by Dr. Mammen and Dr. Rhodes; she remained in charge of Miss Ellen Charles until she was removed to her home. On the morning after the operation Dr. Mammen telephoned to Miss Charles, to remove the sponges from the vagina. Miss Charles with a pair of tissue forceps removed the sponge or gauze which had been left protruding from the vagina; she took but one sponge therefrom. If any other sponges were packed in the vagina, the cul-de-sac or the uterus they were not removed by Miss Charles. On the eighth or ninth day after the operation, appellee's temperature indicated an infection of the wound, and Dr. Rhodes and Dr. Mammen then inserted a glass tube and from this tube was discharged nearly a pint of pus, which showed that the wound had become infected. After the removal of this pus the temperature lowered and the patient thereafter gave no indication of any further trouble from this operation. The wound healed and the drainage tube was removed. Soon after or about the time the appellee left the hospital, she inquired of her physicians if she could go to the State of Massachusetts for a visit; she was advised not to undertake the trip; she then requested, and on August 27, was permitted to go to Fairbury to visit her sister. While there, she ate such food as they prepared for their table. After the first week at Fairbury, appellee began to suffer with pains in the abdomen and was nauseated. On September 8 they became severe and Miss Charles, the nurse, was called to Fairbury to attend her, and appellee returned to Bloomington September 10. Dr. Rhodes was again called and after attending appellee about one week in endeavoring to secure a passage of her bowels and to remove what he considered an impaction produced by constipation. Dr. Chapin was again called in consultation and the trouble

was then pronounced by these two physicians to be an impaction of the bowels. On September 23, appellee says, she was comparatively free from pain and was up nearly all day. On that day, after an attempt by Miss Charles to give her a rectal injection, but which was interrupted by appellee by reason of the pain complained of, she was assisted to the closet and placed upon a slop jar where she remained for a few minutes; when she left the jar Miss Charles discovered in it a gauze sponge, introduced in evidence as plaintiff's exhibit "A." It is insisted by appellee that the sponge passed from her rectum and that the same had been left in her abdomen by Dr. Mammen at the time of the operation, and this action is brought to recover damages therefor.

This cause has been tried three times; the first trial resulted in a verdict for plaintiff for $1,500; this was set aside by the trial court and a new trial awarded; the second trial resulted in a verdict for plaintiff for $2,500 and on appeal to this court that judgment was reversed for errors of the trial court in admission of evidence (158 Ill. App. 360). The last trial, from which this appeal is prosecuted, resulted in a verdict and judgment against appellant for $1,500.

At the close of all the evidence appellant entered a motion requesting the court to direct a verdict for the defendant; this motion was denied and the instruction refused.

Numerous grounds are urged by appellant why this judgment should be reversed, alleging errors of the trial court in the admission and rejection of evidence, in the giving and refusing of instructions, and in the denial of the motion to direct a verdict. From the conclusions that this court has arrived at, it is unnecessary for us to determine the errors assigned upon the admission and rejection of evidence or the refusal and the giving of instructions, except the one to find the defendant not guilty.

There is virtually no dispute in the evidence as to the condition of appellee before the operation, or that the operation was necessary to save her life.  No one was present at the operation but Dr. Mammen, the appellant, Dr. Chapin, Dr. Rhodes, Dr. Hart, Miss Bolles, now Mrs. Struhbar, and Miss Hopping, now Mrs. Diers.  The testimony of all these persons is that no sponge of the size or thickness of plaintiff's exhibit "A." was used in any manner in connection with the abdominal operation upon appellee.  The testimony of Mrs. Struhbar is that she counted the sponges both before and after the operation.  Mrs. Diers also testified that the sponges were counted both "in" and "out" by Mrs. Struhbar, and that she had entire charge of handling them.  These witnesses all testified that after the operation of curettment, the cul-de-sac and the uterus were packed with sponges, that one long sponge was packed in the uterus and was left protruding from the vagina; that this sponge consisted of long, narrow strips of gauze sewed together.  Upon the question as to where the sponge found in the slop jar, being plaintiff's exhibit "A," came from at the time it dropped into the slop jar, plaintiff is wholly dependent upon her own testimony; and unless it can be said that her sole testimony, together with the circumstances and conditions shown, establishes the allegations of her declaration, that this sponge was left in the abdominal cavity at the time of the operation, and that she passed it from her rectum while on the slop jar, then this judgment cannot be permitted to stand.  The testimony of Miss Charles, the nurse, does not disclose where the sponge came from, and all the proper evidence that she could give regarding it was the circumstances and conditions as she noticed them.  Plaintiff offered a great number of physicians and surgeons as expert witnesses for the purpose of showing that a foreign substance such as a sponge if left

in the abdominal cavity might, and, under certain conditions, the tendency would be that it would become encyst, slough through the bowels and pass out the rectum. Upon the question as to whether this might or might not happen, there is no dispute in the evidence; all the doctors who testified upon that question seem to agree that such a condition might be brought about but all testified upon cross examination that with the conditions that this record shows existed, with a tube left in the abdomen by Dr. Mammen for drainage, and after a few days this tube removed, and upon the eighth or ninth day after the operation when the wound began to show indications of infection a tube was inserted and the wound found to be septic and infected, and a glass tube inserted through which nearly a pint of pus was drawn from the appellee's abdomen, but that thereafter every indication of pus disappeared and the wound healed and there was no further indication of pus or infection,—in their opinion that if such condition existed and the wound healed in the manner described, then no foreign substance could have been left in the abdomen at the time of performing the operation, for the reason that if the wound was septic any foreign substance left in the abdomen would have become infected and there was hardly a possibility that the wound could have healed under such conditions. Some ten or twelve physicians as expert witnesses testified on behalf of defendant that the healing of the wound without being followed by fever or temperature and no indication of pus or infection after draining the pus through the glass tube showed a condition that rendered it impossible for any foreign substance to have been enclosed in the abdomen at that time. These facts, taken with the uncontradicted testimony on the part of the four doctors and two nurses, that no such sponge was used in the abdominal operation and that other sponges than

the one which was left protruding from the vagina were used in packing the cul-de-sac and between the uterus and the walls of the rectum for the purpose of absorbing any secretions that might be produced and for keeping the womb in position, with the testimony of Miss Charles, the nurse in charge, that when directed to remove the packing from the vagina, she did not remove anything excepting the one sponge which protruded therefrom, forces us to the inevitable conclusion that the sponge found in the slop jar passed from the vagina and not from the rectum of appellee. A careful examination of the testimony of these experts can only lead a reasonable mind to the conclusion that this sponge was not left in appellee's abdomen by appellant or those who assisted him in this operation.

The declaration filed by appellee contains no charge of negligence other than that in the performance of the abdominal operation appellant negligently and carelessly left this sponge in the abdominal cavity of appellee, and in order to recover upon this declaration it was necessary for the plaintiff to prove this charge of negligence by a preponderance of all the evidence, and even if the sponge was left in the vagina for any undue length of time or any inconvenience or pain was caused to the plaintiff by reason of the sponge in that cavity, there can be no recovery under this declaration. Plaintiff must recover, if at all, upon the charges in her declaration and although other wrongful acts or other acts of negligence might be disclosed by the evidence, they cannot be recovered for in this action. While it is ordinarily the province of a jury to determine the question of fact and while the vital point in this case and the right of recovery depends wholly upon a question of fact, the jury must determine that fact in accordance with the weight of the evidence, and if they utterly disregard the weight and preponderance of the evidence, then it is the duty of the court to

set aside the verdict. Without considering the question of the expert evidence in this record, we find that the evidence of the plaintiff is completely refuted and contradicted by the testimony of the four physicians and two nurses who saw this operation and there is no reason, so far as this record discloses, why her testimony should be given any more weight than that of the other witnesses who testified in regard to the conditions that are shown to exist, and from the evidence in this record it is more reasonable to arrive at the conclusion that the plaintiff is mistaken in her conclusions as to where this sponge was passed from than it is to arrive at the conclusion that the testimony of these four doctors and two nurses is wilful perjury. The testimony of nearly every physician testifying in this case, either on behalf of plaintiff or defendant, is that pregnancy causes more or less constipation and that it is the natural result of that condition, and that extra uterine pregnancy is more likely to produce that condition and render it more effective on account of the greater pressure produced upon the bowels by reason thereof. The evidence of the four physicians and the two nurses that no such sponge was used in the abdominal cavity or in the operation connected therewith, in connection with the testimony of the expert physicians that in their opinion if this wound healed after the insertion of the tube and the withdrawing of the pus on the ninth day after the operation without any further infection or indication of a septic condition, then no foreign substance was left in the abdomen, is so clearly against the finding of the jury that we are compelled to hold that the jury did not carefully weigh and consider the whole evidence, and to hold that the verdict and judgment are contrary to the evidence and must be set aside, and the clerk of this court will enter in the judgment herein a finding that

the appellant is not guilty of the charge of negligence made against him by appellee in her declaration.

The judgment is reversed.

*Reversed.*